UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KEMUEL BURKS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0428-CVE-FHM |
| | ) |
| **MILL CREEK LUMBER & SUPPLY COMPANY,** | ) |
| | ) |
| Defendant. | ) |

**CORRECTED OPINION AND ORDER**

Now before the Court is Defendant Mill Creek Lumber & Supply Company's Motion for Summary Judgment and Brief in Support (Dkt. # 26). Defendant Mill Creek Lumber & Supply Company (Mill Creek) seeks summary judgment as to plaintiff's federal claims for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (Title VII) and 42 U.S.C. § 1981, and plaintiff's state law claims for intentional infliction of emotional distress and discrimination in violation of 25 OKLA. STAT. §§ 1101, 1302. Plaintiff responds that disputed issues of fact preclude summary judgment on all claims.

I.

Mill Creek is a building materials company that markets and sells products to residential and commercial customers. Mark Flippin is the manager of Mill Creek and has the authority to hire and fire employees. Dkt. # 29-5 at 2. Plaintiff, an African-American, worked for Mill Creek as a temporary employee on two occasions. Plaintiff was initially hired as a temporary employee in May 2008 through a temporary staffing agency. Plaintiff's compensation and employment benefits were dictated through the staffing agency, and he was paid directly by the staffing agency. Plaintiff

worked as a delivery driver. In the fall of 2008, Mill Creek offered plaintiff a position as a permanent employee. As a permanent employee, plaintiff would be a direct employee of Mill Creek and would no longer be affiliated with the staffing agency. Plaintiff was required to take a drug test in order to become a permanent employee. In November 2008, plaintiff failed the drug test and as a result was terminated as a temporary employee and denied permanent employment.

In June 2009, Mill Creek again hired plaintiff as a delivery driver through the temporary staffing agency. Plaintiff testified that "I was told as I was filling out the application, you know, if I do my 90 days, that they would hire me on. And I was also told that everyone - everyone goes through a temporary service." Dkt. # 29-1 at 14, 16. However, Flippin submitted an affidavit in support of defendant's motion for summary judgment in which he stated that Mill Creek does not require all employees to go through a period of temporary employment and that he never said that to plaintiff. Dkt. # 30 at 11. Plaintiff testified that after "I was past my 90 days, I went into [Flippin's] office and asked, was I going to get hired on?" and Flippin responded that defendant was "on a hiring freeze." Dkt. # 29-1 at 27. Plaintiff testified that he asked again a few months later and received the same response. Id.

On June 25, 2009, defendant hired David Morgan, a Caucasian, as a load-builder. Dkt. # 29-7. Morgan was hired as a permanent, not a temporary, employee. Within a few months of being hired, Morgan was transferred from load-builder to driver. Dkt. # 29-5 at 7, 11. On October 12, 2009, defendant hired Chad Murphy, a Caucasian, as a counter salesman. Dkt. # 29-8. Murphy was also hired as a permanent employee. At some point, Murphy began filling in as a driver on an as-needed basis. Dkt. # 29-5 at 19. Plaintiff states that both Morgan and Murphy were hired directly as permanent employees without first having been temporary employees. Plaintiff testified that,

after Morgan and Murphy were hired, plaintiff again asked Flippin if he would be hired and Flippin again responded that Mill Creek was on a hiring freeze. Dkt. # 29-1 at 27. Flippin stated in his affidavit that he "never discussed a 'hiring freeze'" with plaintiff. Dkt. # 30 at 11. Plaintiff has not identified any specific job opening that he applied for or about which he inquired. However, plaintiff stated in his deposition that he was qualified for only the positions of driver or manager. Dkt. # 24 at 45-46.

On August 20, 2010, plaintiff was making a lumber delivery when he observed that the lumber had shifted on the back of his truck. Plaintiff called Timothy Ferguson, the dispatcher and plaintiff's supervisor, to report the problem. The parties' accounts of this conversation differ. Plaintiff states that Ferguson asked him if there was anything in the vicinity that he could back up against in order to straighten the load. Plaintiff replied that there was not, and Ferguson said he would send another team to help. Plaintiff states that, after he got off the telephone with Ferguson, he noticed a light pole that he could use to straighten the load. Plaintiff admits that he backed up into the light pole and the light pole fell over. Dkt. # 29-1 at 33. Ferguson's account of the conversation is that plaintiff said there was a light pole nearby and he could use that to straighten the load. Ferguson says he told plaintiff "[h]ell no, don't get nowhere near the pole." Dkt. # 24 at 100.

The next morning, August 11, 2010, Flippin terminated plaintiff's employment. Flippin stated in his deposition that Ferguson informed him of the accident involving the light pole and that Ferguson recounted his version of the telephone call, specifically that Ferguson had told plaintiff not to back into the light pole. Dkt. # 24 at 135-36. Flippin made the decision to terminate plaintiff because he backed into the light pole after he was specifically told not to do so. Id. Flippin testified

3

unequivocally that he terminated plaintiff because of his insubordination and not because of the accident itself. Id. Defendant has submitted a "Safety Committee Incident Investigation" form that was filled out after the light pole incident. The form is not dated and does not state who filled it out. However, it states that plaintiff "was instructed not to [back into the light pole], was given instructions on what to do and driver made decision to attempted [sic] the pole." Id. at 126. The form further states that "[d]river has been terminated due to insubordination for being instructed not to use pole for the correction of the problem." Id. The "narrative" section of the "Driver's Report of Motor Vehicle Accident," completed and signed by plaintiff on the day of the accident, states, in its entirety, that plaintiff "used pole to push materials back on truck & light pole fell down." Id. at 128. After plaintiff's termination, Mill Creek did not replace plaintiff, but instead used the existing drivers to absorb plaintiff's workload. Id. at 102.

Plaintiff makes vague allegations that he was witness to "a number of discriminatory comments and jokes" made by Ferguson and others. Dkt. # 29 at 4. Plaintiff also claims that he was treated differently than Morgan because Morgan had two accidents that he failed to report to management, but Morgan was not terminated for these infractions. Dkt. # 29-1 at 21-22. Plaintiff states that he is aware of these incidents because Morgan told him about them. Dkt. # 29-1 at 31. However, Flippin stated in his affidavit that both of Morgan's accidents were reported to management. Dkt. # 30 at 12. Mill Creek's employee handbook contains a section entitled "Rules of Conduct," which lists nineteen acts that "will result in immediate disciplinary action as determined appropriate by management, and may result in termination of employment." Dkt. # 29-4 at 16. The list of acts includes "insubordination" and "failure to report damage to Company or customer property." Id.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 14, 2010, alleging discrimination on the basis of race. On June 10, 2011, plaintiff commenced this action in state court, and defendant removed it on July 7, 2011. Dkt. # 2. The petition alleges racial discrimination and failure to promote under Title VII, a separate claim of racial discrimination under § 1981, intentional infliction of emotional distress in violation of Oklahoma law, and racial discrimination in violation of 25 OKLA. STAT. §§ 1101, 1302.[1]

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

---

[1] There are a number of factual allegations in the EEOC charge and in the petition on which plaintiff does not rely in his summary judgment opposition. It is possible that this is because plaintiff admitted in his deposition that some of these factual allegations were not accurate. For example, the EEOC charge and petition allege that, after an accident in September 2009, plaintiff was required to submit to a drug test, but a Caucasian employee involved in the accident was not required to submit to a drug test. Dkt. # 2-1 at 3. However, in his deposition, plaintiff admitted that this was not true and, in fact, plaintiff and the other employee went to take their drug tests together. Dkt. # 24 at 39-40. Regardless of the reason that these factual allegations are not relied on by plaintiff in his summary judgment opposition, the Court will address only the factual and legal arguments relied on by plaintiff.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that it is entitled to summary judgment on all of plaintiff's federal claims because plaintiff cannot establish a prima facie case of employment discrimination under either a wrongful termination theory or a failure to promote theory, and he has no evidence that defendant's legitimate, non-discriminatory reason for terminating his employment or refusing to hire him as a permanent employee was pretextual. Defendant also seeks summary judgment as to plaintiff's state law claims of intentional infliction of emotional distress and discrimination. Plaintiff responds that he was treated differently by defendant because of his race and that there are disputed issues of material fact precluding summary judgment on plaintiff's employment discrimination claims.

Plaintiff does not have direct evidence of discrimination and the Court must apply the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis in reviewing

plaintiff's federal claims.[2] Under this analysis, plaintiff must first establish a prima facie case of racial discrimination. Carney v. City & Cnty. of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). Plaintiff's burden at this stage is de minimis. Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005). If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to come forward with a legitimate nondiscriminatory reason for any adverse employment action. Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). If the defendant provides a legitimate non-discriminatory reason for its actions, the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual. Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006).

**A.    Wrongful Termination**

Defendant argues that plaintiff has failed to establish a prima facie case of wrongful termination based on racial discrimination. In order to establish a prima facie case of racial discrimination based on a wrongful termination theory, plaintiff must show that he: (1) belongs to a protected class; (2) was qualified for the position; and (3) was discharged despite his qualifications.[3]  Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1166; Green v. New

---

[2]    The McDonnell Douglas analysis applies both to plaintiff's Title VII discrimination claims and § 1981 discrimination claims, and the Court will consider these claims simultaneously. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 n.4 (10th Cir. 2000).

[3]    The Court recognizes that the Tenth Circuit is split as to whether a fourth element, namely, that plaintiff's position was not thereafter eliminated, is required. See Swackhammer, 493 F.3d at 1166 n.8; see also Antonio v. Sygma Network Inc., 458 F.3d 1177, 1183 n.3 (10th Cir. 2006); Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005); Kendrick, 220 F.3d at 1229. Swackhammer noted, however, that in a discriminatory discharge case, if the employer fired the employee because of unsatisfactory conduct, "the status of the employee's former position after his or her termination is irrelevant." 493 F.3d at 1166 n.8 (internal quotation omitted).

Mexico, 420 F.3d 1189, 1192 n.3 (10th Cir. 2005). "[T]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." Kendrick, 220 F.3d at 1227 (internal quotations omitted).

Defendant concedes that plaintiff is a member of a protected class, that he was qualified for his position, and that he was discharged despite those qualifications. Dkt. # 24 at 14-15. However, defendant argues that plaintiff cannot establish that he was terminated from his employment under circumstances giving rise to an inference of unlawful discrimination. The undisputed evidence demonstrates that after plaintiff was terminated, his job duties were taken over by the other drivers, all of whom are Caucasian. Given that plaintiff's burden at the prima facie stage is de minimis, this is sufficient to establish a prima facie case of racial discrimination. See Maughan v. Alaska Airlines, Inc., 281 F. App'x 803, 806 (10th Cir. 2008) (unpublished)[4] (finding that plaintiff established a prima facie case of age discrimination where evidence showed that plaintiff was replaced by younger man).

Having found that plaintiff has established a prima facie case of wrongful termination based on racial discrimination, the Court will proceed to the second step of the McDonnell Douglas analysis. At this stage, "[t]he defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992). The

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendant has stated that it terminated plaintiff due to insubordination, specifically because he backed his truck into the light pole after he was allegedly told not to do so. Defendant has stated a legitimate, non-discriminatory reason for terminating plaintiff.

The Court now proceeds to the third stage of the McDonnell Douglas analysis. At this stage, the burden shifts back to plaintiff to show that defendant's explanation for terminating plaintiff's employment is pretextual. Plotke, 405 F.3d at 1099; Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir.2004). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (internal quotation omitted). A plaintiff typically attempts to satisfy his burden by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (internal quotations omitted). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988). A plaintiff can prove pretext by showing: (1) falsity in defendant's stated justification for the adverse employment action; or (2) differential treatment of plaintiff and a similarly situated employee who committed an offense of comparable seriousness. Swackhammer, 493 F.3d at 1167-68; Kendrick, 220 F.3d at 1230. Plaintiff challenges defendant's proffered justification for termination on both falsity and differential treatment grounds.

9

As to falsity, plaintiff argues that he was not insubordinate because he was never told by Ferguson not to use the pole to straighten his load. In fact, plaintiff alleges that it was Ferguson who suggested that plaintiff look for something against which he could back up his truck. Even if the Court relies on plaintiff's account of the incident, plaintiff does not meet his burden of showing that defendant's reason for terminating plaintiff was pretextual. Plaintiff was not fired by Ferguson, but by Flippin. Flippin testified that Ferguson told him that plaintiff had been insubordinate. There is no evidence that Flippin had any reason to believe that Ferguson's account of the interaction was false. Plaintiff does not allege that he ever told Flippin that it was Ferguson's idea to back into something, and the driver's report completed by plaintiff that day does not mention the conversation between plaintiff and Ferguson.

"The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City & Cnty. of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotations omitted). A pretext challenge requires a court "to look at the facts as they appear[ed] to the person [who] ma[de] the decision to terminate plaintiff." Kendrick, 220 F.3d at 1231. A court's "role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." Young, 468 F.3d at 1250. Even if plaintiff was not insubordinate in his dealings with Ferguson, there is no evidence that Flippin had any reason to disbelieve Ferguson's account of the incident or that Flippin did not rely on Ferguson's account in good faith. Even if defendant's reason for firing plaintiff was not "wise, fair, or correct," plaintiff has failed to present a disputed issue of fact as to whether Flippin honestly believed that plaintiff had been insubordinate. Therefore, the Court finds that

10

plaintiff has failed to present evidence based upon which a fact finder could make a finding of falsity in defendant's stated justification for plaintiff's termination. See Swackhammer, 493 F.3d at 1169-70 ("Evidence that the employer should not have made the termination decision - for example, that the employer was mistaken or used poor business judgment - is not sufficient to show that the employer's explanation is unworthy of credibility."); Maughan, 281 F. App'x at 808 ("To the extent that [plaintiff] argues that [supervisor] acted on incorrect information or was wrong, his disputes fail [to establish pretext].")

Plaintiff also attempts to demonstrate pretext by arguing that he was treated differently than a similarly situated non-protected employee who violated a work rule of comparable seriousness. An employee qualifies as similarly situated "if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." Kendrick, 220 F.3d at 1232 (internal quotation omitted). The other employee and plaintiff should also share "relevant employment circumstances." Id. Title VII does not, however, render "unexplained differences in treatment" or "inconsistent or irrational employment practices" per se illegal. Flasher, 986 F.2d at 1319.

Plaintiff argues that he was treated differently than Morgan because, when Morgan violated the rules of conduct contained in defendant's employee handbook, Morgan was not "so much as even disciplined, let alone terminated." Dkt. # 29 at 13. Specifically, plaintiff alleges that Morgan twice failed to submit incident reports of accidents in which he was involved and failed to report damage to company property. The only evidence plaintiff submits in support of this allegation is his own testimony that these alleged facts were told to him. However, Flippin stated in his affidavit that Morgan's accidents were reported to management. Plaintiff's hearsay account of events is

11

insufficient to create a disputed issue of fact in light of the sworn statement of an individual with personal knowledge of the events. See Thomas v. International Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (inadmissible hearsay will not defeat summary judgment).

Even if plaintiff's allegations were true, it would not establish that defendant treated similarly situated employees differently than plaintiff. Assuming, arguendo, that plaintiff and Morgan were similarly situated despite the fact that plaintiff was a temporary employee and Morgan was a permanent employee, plaintiff has not demonstrated that he and Morgan violated work rules of comparable seriousness. Plaintiff was fired specifically for his insubordination. There is no evidence that Morgan, or any other employee, was accused of insubordination. Thus, there is no evidence of a non-protected employee who was treated differently than plaintiff for violating a rule of comparable seriousness. See Tucker v. Franciscan Vila, Inc., No. 06-CV-0312-CVE-FHM, 2007 WL 2703194, at *8 (N.D. Okla. Sept. 17, 2007) (finding that plaintiff failed to demonstrate similarly-situated employee was treated differently where no other employee was fired for same infraction as plaintiff).

Plaintiff argues that insubordination and failure to report damage to company property were offenses of comparable seriousness because they are "included in the same exact list of violations" in the employee handbook. Dkt. # 29 at 13. The employee handbook contains a section entitled "Rules of Conduct," which lists 19 infractions and states that they will result in disciplinary action and may result in termination. Dkt. # 29-4 at 16. The section further states that the list is "not intended to cover all acts which might lead to disciplinary action." Id. There is no language in the handbook that would suggest that all 19 infractions, in addition to any non-listed infractions, are of comparable seriousness and should be punished the same way. In fact, the list includes both

"loafing on the job" and "[t]heft of company, customer, or employee property." Id. If plaintiff's position that all infractions on the list were of comparable seriousness were correct, it would mean that the same punishment would be warranted for an employee who spent a few minutes daydreaming and an employee who embezzled a substantial amount of money. Such a result is absurd. Plaintiff has failed to present any facts that a similarly situated employee who violated a rule of comparable seriousness was treated differently than plaintiff.

Plaintiff has offered "no independent evidence, beyond [his] mere conjecture, that would allow a reasonable factfinder to disbelieve [defendant's] explanation[] and thereby infer that [racial] discrimination was the actual motivation for [his] termination." Swackhammer, 493 F.3d at 1172. This Court, therefore, concludes that defendant's termination of plaintiff was not pretextual.

**B.      Failure to Promote/Hire**

Defendant argues that plaintiff has failed to establish a prima facie case of discrimination based on defendant's failure to hire plaintiff as a permanent employee. In order to establish a prima facie case of racial discrimination based on a failure to promote theory, plaintiff must establish that "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1306-07 (10th Cir. 2005).

Defendant argues that plaintiff has not established a prima facie case because plaintiff never "applied" for a particular position, but "merely desired for Mill Creek to hire him as a permanent employee." Dkt. # 24 at 18. However, "[e]mployment discrimination law does not require that a plaintiff formally apply for the job in question." Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251

13

(10th Cir. 1992). It is sufficient that "the employer either be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." Id. Plaintiff testified that he repeatedly asked Flippin whether he would be hired as a permanent employee, and this was sufficient to put defendant on specific notice that plaintiff sought permanent employment.

However, plaintiff has failed to establish that there was any available position for which he was qualified and could have been hired. In order to establish a prima facie case, plaintiff must show that he "applied for . . . an available position." Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). "At this stage in the litigation, it is simply not sufficient for plaintiff merely to assert that he was generally denied 'available positions,'" but instead plaintiff must "come forward with evidence of a specific vacant position for which the plaintiff was qualified and on which the plaintiff's claim is based." Kaster v. Safeco Ins. Co., 212 F. Supp. 2d 1264, 1272 (D. Kan. 2002).

Plaintiff states in his deposition that he was qualified for only the positions of manager or driver. Thus, plaintiff must present evidence that, during the period in which defendant was on notice of plaintiff's desire to be hired, a permanent position as manager or driver was available to which plaintiff was not promoted. Plaintiff has failed to present such evidence. The undisputed facts demonstrate that plaintiff was hired for his second stint as a temporary employee in June 2009, and that plaintiff did not begin asking Flippin about a permanent position until 90 days thereafter, or after September 1, 2009, at the earliest. There is no evidence that a permanent position as manager or driver was available between September 1, 2009 and plaintiff's termination in August 2010. Plaintiff argues that the hiring of Morgan and Murphy show that there were positions available. However, Morgan was hired as a load-builder on June 25, 2009 and Murphy was hired

as a salesman on October 12, 2009. By admitting that he was qualified for only the positions of manager or driver, plaintiff has impliedly admitted that he was not qualified for either the position of load-builder or salesman. Plaintiff argues that the fact that Morgan was made a driver sometime around September 2009 shows that there was an open position for a driver. However, Flippin testified that he would not have hired an outside employee for that position because he "didn't need a full-time - another full-time employee at my facility." Dkt. # 29-5 at 13. Thus, to the extent there was a driving position open after September 1, 2009, the undisputed evidence demonstrates that it was only open to full-time, permanent employees. Plaintiff did not meet that criteria. Because plaintiff has failed to identify a specific available job for which he was qualified during the time that defendant was on notice of his desire to be hired, plaintiff has failed to establish a prima facie case for failure to promote/hire based on racial discrimination. See Jones v. Unisys Corp., 54 F.3d 624, 631 (10th Cir. 1995) (plaintiff failed to establish prima facie case for employment discrimination where he "did not identify specific jobs to which he claims he should have been transferred nor present evidence he was qualified for such jobs").

The Court finds that plaintiff has failed to establish a disputed issue of material fact with respect to his Title VII and § 1981 claims for racial discrimination on either a wrongful termination theory or a failure to promote/hire theory. Defendant is entitled to judgment as a matter of law on these claims.

**C.     State Law Claims**

Defendant argues that it is entitled to summary judgment on plaintiff's state law claims of intentional infliction of emotional distress and racial discrimination. The Court has disposed of all claims over which it has original jurisdiction. Under 28 U.S.C. § 1367(c), a federal district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." The Court recognizes that it has discretion to retain jurisdiction over a pendent state law claim in some circumstances. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726; see also United States v. Botefuhr, 309 F.3d 1263, 1273-74 (10th Cir. 2002) ("a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial").

The Court has found that summary judgment should be entered in favor of defendant on plaintiff's federal law claims, and the two surviving claims are a state law tort claim of intentional infliction of emotional distress and a state claim for racial discrimination in violation of 25 OKLA. STAT. §§ 1101, 1302. The preferred procedure in such cases is to dismiss the state law claims without prejudice to refiling in state court. See Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798, 803 (10th Cir. 1991); United Mine Workers, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . ."). This is especially true in light of the fact that disposition of one of plaintiff's state law claims involves construction of a state statute. However, because this is a removed action that plaintiff originally

16

filed in state court, the proper procedure, in the interests of comity and to promote justice, is to remand plaintiff's state law claims to Tulsa County District Court.

**IT IS THEREFORE ORDERED** that Defendant Mill Creek Lumber & Supply Company's Motion for Summary Judgment and Brief in Support (Dkt. # 26) is **granted in part** as follows: summary judgment is entered for defendant on plaintiff's Title VII and § 1981 claims; the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims of intentional infliction of emotional distress and racial discrimination, and those claims are **remanded** to Tulsa County District Court. A separate judgment is entered herewith.

**DATED** this 30th day of April, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE